Todd E. Zenger (5238)
KIRTON McCONKIE
36 S. State Street, Suite 1900
Salt Lake City, Utah 84111
Phone: (801) 328-3600
Fax: (801) 212-2104
Email: tzenger@kmclaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ME2 PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DOES 1- 14, <br><br> Defendants. | Civil Action No. _____ <br><br> Judge _____ <br><br> COMPLAINT FOR <br> COPYRIGHT INFRINGEMENT <br> AND <br> JURY DEMAND |

Plaintiff alleges the following cause of action against Defendants:

## I.    INTRODUCTION

1.    This is an action for enforcement of copyright.  The United States Constitution and enacted Copyright laws prohibit the unauthorized copying and distribution of copyrightable works.  This permits copyright owners, including the owners of motion pictures, to enforce their copyrights against infringers.  This protection incentivizes and encourages the production of creative works.

2.      Consistent with the federal copyright law, in Utah the development of the motion picture industry is a state public purpose[1] which significantly impacts the state's economy and contributes to the fiscal wellbeing of the state and its people.[2] For example, it is reported that the Sundance Film Festival alone brings more than $60 million into Utah annually and that the film industry in Utah is responsible for hundreds of jobs and over $30 million of income to Utahns.[3]

3.      Plaintiff ME 2 Productions, Inc. is a developer and producer of the motion picture *Mechanic: Resurrection* ("Copyrighted Motion Picture") featured in theaters. Plaintiff brings this action in an effort to stop Defendants and others from copying and distributing to others infringing copies of the Copyrighted Motion Picture.

4.      Defendants are infringing through use the BitTorrent file sharing protocol. Defendants' infringements allow them and others to unlawfully obtain and distribute copies of the Copyrighted Motion Picture that the Plaintiff expended significant resources to create. Each time a Defendant unlawfully distributes an unauthorized copy of the Copyrighted Motion Picture to others over the Internet, each person who copies that motion picture can then further distribute that unlawful copy to others without any significant degradation in sound and picture quality. Thus, a Defendant's distribution of even a part of an unlawful copy of the Copyrighted Motion Picture can further the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people. Further, Defendants acts of distributing the Copyrighted Motion Picture support,

---

[1] *Utah Code 63N-8-101 et seq.*
[2] http://www.utahbusiness.com/lights-camera-utahs-film-companies-stand-ready-industry-action/;
http://film.utah.gov.
[3] http://www.sundance.org/pdf/festival-info/sff15-economic-impact-report.pdf (2015 report).

maintain and further a for-profit exploitation by Defendants and others of the Copyrighted Motion Picture. The Plaintiff now seeks redress for this rampant infringement of its exclusive rights.

## II.  JURISDICTION AND VENUE

5.      This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States (17 US.C. § 101 et seq.).

6.      This Court has jurisdiction under 17 US.C. § 101 et seq.; 28 US.C. § 1331 (federal question); and 28 US.C. § 1338(a) (copyright).

7.      Venue in this District is proper under 28 US.C. § 1391(b) and/or 28 U.S.C. §1400(a).  Although the true identity of each Defendant is unknown to Plaintiff at this time, on information and belief each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District.   On information and belief, personal jurisdiction in this District is proper because each Defendant, without consent or permission of Plaintiff as exclusive rights owner, distributed and offered to distribute over the Internet infringing copies of Copyrighted Motion Picture for which Plaintiff has exclusive rights.

## III.  PARTIES

**A.      <u>Plaintiff ME2 Productions, Inc. and its Copyright</u>**

8.      Plaintiff is engaged in the production of the Copyrighted Motion Picture known as and entitled *"Mechanic: Resurrection"* for theatrical exhibition, home entertainment and other forms of distribution.

9.      Plaintiff is the owner of the exclusive rights under copyright in the United States in the *Mechanic: Resurrection*.  *Mechanic: Resurrection* has been registered with

the United States Copyright Office by ME 2 Productions, Inc. effective August 2, 2016 and assigned Registration No. PA 1-998-057.  (Exhibit A)

10.     Under the Copyright Act, Plaintiff is the proprietor of all right, title, and interest in *Mechanic: Resurrection*, including the exclusive rights to control the reproduction and distribution of the Copyright Motion Picture to the public, including the right to sue for past infringement.

11.     *Mechanic: Resurrection* contains wholly original material that is copyrightable subject matter under the laws of the United States. It is easily discernible as a professional work as it was created using professional performers, directors, cinematographers, lighting technicians, set designers and editors and with professional-grade cameras, lighting and editing equipment. It has significant value and has been created, produced and lawfully distributed at considerable expense. *Mechanic: Resurrection* is currently offered for sale in commerce, playing in theaters and available for rental and/or purchase from Amazon, iTunes and Netflix, among others.

12.     Defendants have notice of Plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and all packaging and copies, each of which bore a proper copyright notice.

**B.     <u>Defendants</u>**

13.     Upon information and belief, each Doe Defendant 1-14 (Exhibit B) copied and/or distributed or allowed to be copied and/or distributed Plaintiff's Copyright Motion Picture *Mechanic: Resurrection* using a file bearing the hash number   SHA1: B5201111ACEC1E5025DE3087B15DF84612C02579.  The true name of each Defendant is unknown to Plaintiff at this time.  Each Defendant is known to Plaintiff only by the Internet Protocol ("IP") address below used by each Defendant and which address is assigned by a local Internet Service Provider ("ISP") to the user or subscriber:

4

| Doe | IP | ISP | State |
|-----|-----|-----|-------|
| 1 | 71.37.66.45 | CenturyLink | Utah |
| 2 | 67.2.66.98 | CenturyLink | Utah |
| 3 | 45.56.6.41 | Google Fiber | Utah |
| 4 | 67.135.181.213 | CenturyLink | Utah |
| 5 | 172.110.56.246 | CenturyLink | Utah |
| 6 | 75.169.20.202 | CenturyLink | Utah |
| 7 | 174.23.245.222 | CenturyLink | Utah |
| 8 | 75.169.242.55 | CenturyLink | Utah |
| 9 | 45.56.32.220 | Google Fiber | Utah |
| 10 | 45.56.59.164 | Google Fiber | Utah |
| 11 | 45.56.35.215 | Google Fiber | Utah |
| 12 | 45.56.62.71 | Google Fiber | Utah |
| 13 | 45.56.23.139 | Google Fiber | Utah |
| 14 | 75.162.238.81 | CenturyLink | Utah |

Plaintiff also knows the date and at the time at which the infringing activity of each Defendant was observed, as explained in detail below. Through published geolocation data, the IP address used by each Defendant has been traced to the District of Utah. Based on this information Plaintiff believes that information obtained in discovery will lead to the identification of each Defendant's true name and location and permit Plaintiff to amend the Complaint to state the same.

14.     In addition, activity of each IP address of Defendants has also been observed and associated with significant infringing activity and associated with the exchange of other titles on peer-to-peer networks. The volume, titles and persistent observed activity associated with each Defendant's IP address indicates that each Defendant is not a transitory or occasional guest, but is either the primary subscriber of the IP address or someone who resides with the subscriber and/or is an authorized user of the IP address. The volume of the activity associated with each Defendant's IP address further indicates that anyone using or observing activity on the IP address would likely be aware of the conduct of Defendant. Also, the volume and titles of the activity associated

with each Defendant's IP address indicates that each Defendant is not a child, but an adult, often with mature distinct tastes.

## IV.   PEER-TO-PEER NETWORKS AND THE USE OF BITTORRENT PROTOCOL

15.     Defendants are each a participant in a peer-to-peer ("P2P") network using the BitTorrent protocol. The BitTorrent protocol makes even small computers with low bandwidth capable of participating in large data exchanges across a P2P network.

16.     To begin an exchange in a traditional P2P network, the initial file-provider intentionally elects to share a file with a torrent network. This initial file is called a seed or seed file. Other users ("peers") choose to connect to the same torrent network and connect to the seed file to download it. As additional peers request the same seed file each additional user becomes a part of the network from where a copy of the seed file can be downloaded.

17.     However, unlike a traditional P2P network, in a torrent network the seed file is broken into many pieces with each peer receiving a different piece of the seed file from users who have already downloaded that piece or all the pieces of the seed file that together comprise the whole. This piecemeal system with multiple pieces of the seed file coming from peer members is commonly referred to as a "swarm" in which the peers are cross-sharing all the pieces of the seed file until each peer has acquired all the pieces. Such file sharing networks can be properly used to share files where such file sharing is authorized.

18.     In this case the torrent sharing of the copyrighted work is not authorized. The effect of using torrent technology to share unauthorized copies of copyrighted works makes every downloading peer also an uploading peer of the illegally transferred seed file or pieces thereof of the copyrighted work. This means that every "node" or peer user who has improperly obtained an infringing copy of the copyrighted material in a torrent

network can also be a source of improper or infringing download, and thus a distributor for that infringing file.

19.     This kind of distribution mechanism of a BitTorrent network leads to a rapid, viral spreading of infringement throughout peer users. As more peers join the swarm, the availability of successful infringing downloads of the pieces of the seed file increases.  Essentially, because of the nature of the swarm downloads described above, every peer is an infringer sharing copyrighted material with other infringing peers.

20.     In this case Defendants' actions are part of a common design, intention and purpose to hide behind the apparent anonymity provided by the Internet and the BitTorrent technology to unlawfully copy and distribute pieces of the Copyrighted Motion Picture in a manner that, but for the investigative and monitoring technology used by Plaintiff, would be untraceable, leaving the Plaintiff without the ability to enforce its copyright rights. By participating in the "swarm" to download Plaintiff's Copyrighted Motion Picture, the Defendants agreed with one another to use the Internet and BitTorrent technology to engage in violation of federal statute to accomplish and unlawful objective.


V.      **COMPUTER FORENSIC IDENTIFICATION OF BITTORRENT INFRINGEMENT**

21.     In this case Plaintiff has identified each infringing Defendant.  This is done by identifying the IP address assigned by the ISP used by each Defendant and the date and at the time at which the infringing activity of each Defendant was monitored and observed. This monitoring and observation is accomplished using forensic software to collect, identify and record the IP addresses used by seeders and peers using BitTorrent protocol to unlawfully share, copy, reproduce and distribute copyrighted works.

22.     More specifically, forensic software is used to scan P2P networks for the presence of infringing transactions with respect to a particular copyrighted audiovisual work. Whenever a digital copy of an audiovisual work is prepared by a seeder for

distribution the computer system assigns a unique, coded, string of characters called a "hash checksum" ("hash ID") to that seed file or piece(s) thereof.  The hash ID is a string of letters and numbers generated by a commonly used mathematical algorithm known as US Secure Hash Algorithm 1 or "SHA-1." The unique hash ID then accompanies a copy of the file or parts thereof whenever a copy is made or sent to another.

23.     In this way the computer system software facilitates the monitoring and identification of computers that are used to transmit a copy or a part of a copy of a digital media file identified by a particular hash ID because the computer having its own unique, certain IP address can be shown to receive or transmit files with particular hash IDs at a particular date and time.

24.     To confirm reliability of such monitoring and identification, the forensic software uses recognized Transmission Control Protocol (TCP) to establish a direct electronic connection to each Defendant's computer.  This permits the forensic software to establish and maintain a network conversation through which the forensic software and the Defendant's computer exchange packets of data with each other.  The exchange of data between the forensic software and the Defendant's computer directly identifies the Defendant's computer by its unique IP address and that on a given date and at a given time Defendant's computer possess files with particular hash IDs.

25.     Additional software using geolocation functionality is then used to confirm the geographical location of the computer used in the infringement. Though an IP address alone does not reveal the name or contact information of the account holder, in this case the Doe Defendant, it does reveal the likely general location of the Defendant. IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries. These registries assign blocks of IP addresses to ISPs by geographic region. In the United States, these blocks are assigned and tracked by the American Registry of Internet Numbers. Master tables correlating the IP addresses with local regions are maintained by these organizations in a publicly available and searchable

format. An IP address' geographic location can be further narrowed by cross-referencing this information with secondary sources such as data contributed to commercial databases by ISPs.  This regional data of IP addresses puts the Defendants in this judicial district.

26.     The end result of the forensic software are evidence logs of infringing transactions and the IP addresses of the users responsible for copying and distributing the audiovisual work, here *Mechanic: Resurrection*. The IP addresses, hash IDs, dates and times, ISP and geolocation contained in Exhibit B correctly reflect infringers using the IP addresses and that they were all part of a "swarm" of users that were reproducing, distributing, displaying and/or performing the copyrighted work.[4]

## VI.   JOINDER

27.     Each Defendant is alleged to have committed violations of 17 U.S.C. § 101 *et. seq.* within the same series of transactions or occurrences (e.g. downloading and distribution of the same Copyrighted Motion Picture owned by Plaintiff) and by using the same means (BitTorrent network) at or about the same time as established by the contemporary exchange of the files bearing the same unique hash ID fingerprint.

28.     In this case, Plaintiff's Copyrighted Motion Picture or parts thereof bear hash ID shown in Exhibit B and was included in at least one file of the related torrent file swarm exchange joined by each Doe Defendant.  In other words, all of the infringements alleged in this lawsuit arise from the same unique copy of Plaintiff's movie as evidenced by the same cryptographic hash ID. The Defendants are all part of the same "swarm" revealed by the unique hash ID.

---

[4] In logs kept in the ordinary course of business, local ISPs keep track of the IP addresses assigned to their customers/subscribers. Once provided with an IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the subscriber with more specificity, namely name, address and contact information. Only the ISP to whom a particular IP address has been assigned for use by its subscribers can correlate that IP address to a particular subscriber. From time to time, a subscriber of Internet services may be assigned different IP addresses from their ISP. Thus, to correlate a subscriber with an IP address, the ISP also needs to know when the IP address was being used. Unfortunately, many ISPs only retain for a very limited amount of time the information necessary to correlate an IP address to a particular subscriber, making early discovery necessary and important.

29.     Defendants' acts occurred in the same or related series of torrent transactions because each Defendant downloaded and/or distributed, or offered to distribute *Mechanic: Resurrection* to other infringers on the torrent network, including the Doe Defendants and/or other network users, who in turn without permission from Plaintiff downloaded and/or distributed the Copyrighted Motion picture. The temporal proximity of the monitored and observed acts of each Defendant, together with the known propensity of BitTorrent participants to actively exchange files continuously for hours and even days, or over a period of weeks or months, makes it apparent that Defendants either directly exchanged the motion picture with each other, or did so through intermediaries and each shared in the distribution of the Copyrighted Motion Picture to others bearing the same hash ID. Therefore, Defendants each combined with other infringers on the BitTorrent network to copy and/or distribute the Copyrighted Motion Picture, either in the same transaction or occurrence or a series of intentionally related transactions or occurrences.

30.     This combination is established because using BitTorrent requires the user/seeder/peer to intentionally download a program from BitTorrent that they then install on their computer called a "client." The BitTorrent client is the user's interface during the downloading/uploading process. The client may be free, supported by advertising, offer upgrades or add on services for a fee, or a combination of several options.  The initial seeder uses the client to divide the uploaded content, in this case Plaintiff's Copyrighted Motion Picture, into pieces saved as electronic files and delivers the pieces to different requesting peers.  The recipient peers then automatically begin delivering the piece they just received to other peers in the swarm.

31.     Once a peer has downloaded all the pieces the client reassembles the pieces and the peer is able to view the movie.  Also, once a peer has downloaded all the pieces, that peer becomes known as an "additional seed" because it now continues to download pieces to other peers.

32.     Persons like Defendants who wish to obtain content through a torrent swarm visit a "torrent site" or network site to find media or content available for torrent download, often using a standard web browser. A torrent site is often associated with advertising revenue or with subscription supported index of media or content being made available by other torrent users on the network and maintains a listing of movies and television programs among other protected content. A user then uses the torrent site to connect with other users and exchange or "share" content though the BitTorrent protocol often with many users at the same time as discussed above.

33.     Internet piracy and in particular BitTorrent piracy of copyrighted work, though known as peer-to-peer file sharing, enables Defendants to not only avoid the expense of buying, renting or buying a ticket to view legitimate copies of the Copyright Motion Picture, but to also receive benefits of value.  For example, P2P file sharing is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising. To increase the value of the advertising and sometimes subscription access sold by torrent sites, many torrent sites work to expand the pool of available titles and speed of downloads through increasing the number of member peers and thus the desirability of their clients and networks. To accomplish this, torrent sites reward participating peers who contribute by giving them faster download speeds, greater access, or other benefits.

34.     A significant element of the BitTorrent economic model is that those who participate and download movies not only share and upload movies with others without charge among themselves, but participants are often rewarded through various means based on the volume and availability of content seeders/peers in turn provide the network. In sum, there is a feedback incentive for participants as they obtain not only the benefit of their pirated copy of a movie without paying the copyright holder, but they obtain other benefits by increasing the availability of pirated content to others. As such there are a growing number of users that participate in P2P networks and receive personal gain or

compensation in that the networks they use reward those who provide large numbers of files for upload to others.

35. The use of BitTorrent does more than cause harm through the theft of intellectual property. The BitTorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and a system of rewards and compensation to the participants, each of whom contribute to and further the infringing enterprise. Each Defendant is a participant in the BitTorrent distribution of pirated files and the substantially similar conduct of each Defendant furthered a model of business that profits from theft of intellectual property including Plaintiff's Copyrighted Motion Picture.

36. Accordingly, pursuant to Fed.R.Civ.P. 20(a)(2) each of the Defendants is therefore properly joined at least because: (a) the infringement complained of herein by each of the Defendants was part of a series of transactions involving an identical copy of Plaintiff's Copyrighted Motion Picture; (b) the conduct of each Defendant jointly and collectively supported and advanced an economic business model of avoiding payment to the copyright holder and/or profiting from the piracy of Plaintiff's Copyrighted Motion Picture; (c) there are common questions of law and fact; and (c) each Defendant knowingly and actively participated in a combination  to perform an illegal act and/or injure Plaintiff through use of the BitTorrent protocol to infringe Plaintiff's Copyrighted Motion Picture.

37. Permissive joinder in the instant case permits a more efficient management of Plaintiff's claims against the several Doe Defendants, reduces the costs to Plaintiff and Defendants and reduces the costs and burdens on the Court. Notice is provided, that on being specifically identified and on request from an identified Defendant, Plaintiff agrees to sever any Defendant that establishes material unfair prejudice in being joined in this matter and to proceed against each such Defendant individually.

### VII.   CAUSE OF ACTION—COPYRIGHT INFRINGEMENT

38.     Plaintiff realleges the substance of the prior paragraphs.

39.     Plaintiff owns the exclusive rights to the commercially released motion picture *Mechanic: Resurrection,* which has significant value and has been acquired, produced and created at considerable expense.

40.     At all relevant times Plaintiff has been the holder of the pertinent exclusive rights infringed by Defendants to the Copyrighted Motion Picture *Mechanic: Resurrection*. The Copyrighted Motion Picture is the subject of a valid Certificate of Copyright Registration.

41.     Plaintiff is informed and believes that each Defendant, without the permission or consent of Plaintiff, has used, and continues to use, an online media distribution system to wrongfully misappropriate, reproduce and distribute to the public, including by making available for distribution to others the Copyrighted Motion Picture

42.     On information and belief, each Defendant participated in a swarm and/or reproduced and/or distributed the same seed file(s) of the Copyrighted Motion Picture *in* digital form either directly with each other or through a series of knowingly intended and related transactions.

43.     Plaintiff has identified each Defendant by the IP address assigned to that Defendant by his or her ISP and the date and at the time at which the infringing activity of each Defendant was observed.

44.     In addition, or in the alternative, Defendants acted to obtain Internet access through an ISP and permitted, facilitated and materially contributed to the extensive use of the Internet through his/her ISP to infringe Plaintiff's exclusive rights under The Copyright Act by or with others.

45.     Defendants, with knowledge of the infringing conduct, failed to reasonably secure, police and protect the use of his/her Internet service against use for

improper purposes such as piracy, including the downloading and sharing of Plaintiff's Copyrighted Motion Picture by others. Defendants had the right and ability to supervise and control the activity constituting the infringement.

46.     In doing so, each Defendant has directly, indirectly and/or contributorily violated Plaintiff's exclusive rights of at least reproduction, preparation derivative works and distribution of the Copyrighted Motion Picture. Each Defendant's actions constitute infringement of Plaintiff's exclusive rights protected under 17 US.C. § 101 et seq.

47.     The Copyright Motion Picture contains a copyright notice advising the viewer that the motion picture is protected by the copyright laws. Each of the Defendants' actions with respect to copyright infringement and other acts described herein were made with full knowledge of Plaintiff's ownership of the copyrights in the motion picture.

48.     The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause the Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. The Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, the Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing the Plaintiff's copyright and ordering that each Defendant destroy all copies of the copyrighted motion picture made in violation of the Plaintiff's copyrights.

49.     By reason of the foregoing acts, if such remedy is elected at trial, Plaintiff is entitled to statutory damages from each Defendant pursuant to 17 USC §504, *et seq*. Alternatively, at Plaintiff's election, Plaintiff is entitled to its actual damages incurred as a result of each Defendants' acts of infringement plus any profits of Defendants attributable to the infringements in an amount to be proven at trial.

1.     The foregoing acts of infringement have been willful, intentional, and in disregard of and with indifference to the copyrights of Plaintiff.

2.      As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to its attorneys' fees and costs pursuant to 17 US.C. § 505.

## VIII.   RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays for judgment against each Defendant as follows:

A.      A finding and judgment that each Defendant has infringed Plaintiff's copyright in the motion picture *Mechanic: Resurrection.*

B.      Pursuant to 17 U.S.C. §502, an order preliminarily and permanently enjoining each Defendant from directly or indirectly infringing Plaintiff's rights in *Mechanic: Resurrection* including without limitation by using the Internet to reproduce or copy, distribute or otherwise make available for distribution to the public *Mechanic: Resurrection*, except pursuant to a lawful license or with the express authority of Plaintiff.

C.      Pursuant to 17 U.S.C. § 503, an order that each Defendant destroy all copies of *Mechanic: Resurrection* that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of *Mechanic: Resurrection* transferred onto any physical medium or device in each Defendant's possession, custody, or control.

D.      An order that each Defendant file with this Court and serve on Plaintiff, within 30 days of service of notice of judgment, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the terms of the ordered relief.

E.      Pursuant to 17 U.S.C. § 504 or other applicable provision, for actual or statutory damages from each Defendant, at the election of Plaintiff, and a finding of willful infringement.

F.      Pursuant to 17 U.S.C. § 505, for Plaintiff's reasonable attorneys' fees and costs.

G.      For such other and further relief as the Court deems proper.

JURY DEMAND

A demand is hereby made for trial by jury.

DATED this 23rd day of March, 2017.

                        KIRTON McCONKIE


                        By: ____/s/Todd E. Zenger_____
                                Todd E. Zenger

                                Attorneys for Plaintiff
                                ME2 PRODUCTIONS, INC.